IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERICA WILKINS, On Behalf of Herself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 3:18-cv-1511 |
| DALLAS COWBOYS FOOTBALL CLUB, LTD., | § § § | COLLECTIVE ACTION |
| | § § | JURY TRIAL DEMANDED |
| Defendant. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES

Plaintiff, Erica Wilkins ("Plaintiff"), files this Complaint against Defendant, the Dallas Cowboys Football Club, Ltd. ("Defendant"), showing in support as follows:

### I.   SUMMARY

1. Plaintiff is a former employee of Defendant who worked for Defendant as a cheerleader.

2. Plaintiff's dates of employment with Defendant are from approximately May 27, 2014 to approximately August 9, 2017.

**A.   FLSA Overtime and Minimum Wage Claims**

3. At times, Defendant paid Plaintiff on an hourly basis, but for fewer hours than Plaintiff actually worked per corresponding workweek. At other times, Defendant paid Plaintiff a flat rate, as opposed to an hourly rate.

4. Plaintiff routinely worked in excess of 40 hours per workweek while performing her cheerleading job duties for Defendant. However, Plaintiff was not paid time and one-half her regular rate of pay for each and every hour worked over 40 in each workweek during her employment with Defendant.

5. Additionally, the number of hours Plaintiff worked in a seven day workweek relative to wages paid to her for same resulted in workweeks in which Plaintiff was paid less than $7.25 per hour worked.

6. Plaintiff seeks to recover unpaid overtime wages, minimum wages, and all other available damages under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA").

7. Plaintiff files this FLSA overtime and minimum wage case individually and on behalf of all others similarly situated as a FLSA collective action pursuant to 29 U.S.C. § 216(b).

**B.    Equal Pay Act Claims**

8. Plaintiff also brings individual and collective action claims pursuant to the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). Plaintiff and other cheerleader employees of Defendant, who were all female (the "EPA Putative Collective Action Members"), are/were paid at a rate less than Defendant's mascot, "Rowdy," who, at all times relevant, was male. Plaintiff and the EPA Putative Collective Action Members performed work which required equal skill, effort, and responsibility under similar working conditions as Defendant's mascot. Indeed, Plaintiff and the EPA Putative Collective Action Members routinely appeared and/or performed with Defendant's mascot in connection with their job duties for Defendant.

9. Plaintiff files this EPA claim individually and on behalf of all others similarly situated as a collective action pursuant to 29 U.S.C. § 216(b).

## II.    THE PARTIES, JURISDICTION, AND VENUE

**A.    Plaintiff Erica Wilkins**

10. Plaintiff is a natural person. She has standing to file this lawsuit.

11. By filing this lawsuit, Plaintiff consents to join same pursuant to 29 U.S.C. § 216(b). Furthermore, Plaintiff's executed consent to join is attached hereto as Exhibit 1. 29 U.S.C. § 256(a).

**B.   Putative Collective Action Members**

    **1.   FLSA Overtime Collective Action Claims**

12. The FLSA Overtime Claim putative collective action members (hereafter the "Overtime Claim Putative Collective Action Members") are all current and/or former employees of Defendant who are/were similarly situated to Plaintiff that: (a) work/worked as cheerleaders for Defendant; (b) are/were paid on an hourly rate and/or flat fee basis; (c) work/worked more than 40 hours in any workweek in the relevant time period as employees of Defendant; and (d) are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each such workweek by Defendant.

13. All of the Overtime Claim Putative Collective Action Members are similarly situated to Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

14. The time period relevant to the claims of the Overtime Claim Putative Collective Action Members is three years preceding the date this lawsuit was filed and forward.

    **2.   FLSA Minimum Wage Collective Action Claims**

15. The FLSA Minimum Wage Claim putative collective action members (hereafter the "Minimum Wage Claim Putative Collective Action Members") are all current and/or former employees of Defendant who are/were similarly situated to Plaintiff that: (a) work/worked as cheerleaders for Defendant; (b) are/were paid on an hourly rate and/or flat fee basis; and (c) are not/were not paid at least $7.25 per hour for each hour worked in a seven day workweek when dividing the total wages paid by the total hours worked in each such workweek.

16. All of the Minimum Wage Claim Putative Collective Action Members are similarly situated Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

17. The time period relevant to the claims of the Minimum Wage Claim Putative Collective Action Members is three years preceding the date this lawsuit was filed and forward.

### 3. EPA Claim Putative Collective Action Members

18. The EPA Claim Putative Collective Action Members are all current and/or former cheerleader employees of Defendant during the time period of three years preceding the date this lawsuit was filed and forward who are/were similarly situated to Plaintiff and are/were paid remuneration at a rate and/or amount less than that of Defendant's mascot.

19. All of the EPA Claim Putative Collective Action Members are similarly situated Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

### C. Dallas Cowboys Football Club, Ltd.

20. Defendant is a domestic for-profit limited partnership formed under the laws of the State of Texas.

21. During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

22. Defendant's principal office and place of business, as listed with the Texas Secretary of State as of the filing of this pleading, is Cowboys Center, One Cowboys Parkway, Irving, Dallas County, Texas 75063.

23. At times relevant, Defendant is and/or was an "employer" of Plaintiff, the Overtime Claim Putative Collective Action Members, the Minimum Wage Claim Putative Collective Action Members, and the EPA Claim Putative Collective Action Members.

24. At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

25. At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees who engaged in commerce. For example, Defendant has, at all relevant times, had two or more employees engaged in cheerleading who performed work for Defendant in Texas and states other than Texas. Defendant has, at all relevant times, had two or more employees engaged in the advertising and/or sale of Dallas Cowboys tickets and/or Dallas Cowboys and/or Dallas Cowboys Cheerleader merchandise who engaged in commerce. Such advertising and sales occurred in Texas and states other than Texas.

26. At all times relevant to this lawsuit, Defendant employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that are and/or were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include computers, computer related equipment, communication devices, football equipment, uniforms, and vehicles used in connection with Defendant's business operations.

27. On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

28. Defendant may be served with summons by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**D.**     **Jurisdiction and Venue**

29. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

30. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

31. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases her claims on federal law, namely the FLSA.

32. Venue is proper in the United States District Court for the Northern District of Texas because a substantial part of the events giving rise to Plaintiff's claims occurred in this Judicial District. Furthermore, Defendant conducts business operations and maintains its principal place of business in this Judicial District.

33. Venue is proper in the Dallas Division of the United States District Court for the Northern District of Texas because, as of the filing of this lawsuit, Defendant lists with the Texas Secretary of State that its principal office and place of business is in this Division, Defendant maintains business operations in this Division, and a substantial part of the events giving rise to Plaintiff's claims occurred in this Division.

### III. FACTUAL BACKGROUND

34. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

35. Plaintiff was employed by Defendant as a cheerleader from approximately May 27, 2014 to approximately August 9, 2017.

36. At times, Plaintiff was paid on an hourly basis. That hourly rate was generally set at $8.00 per hour. That method of pay generally applied to practices, training, rehearsals, and "Making the Team" filming and/or production.[1] However, Plaintiff was not paid that hourly rate

---

[1] "Making the Team" is a television program which is/was shown on the CMT network, and on information and belief, is based on a for profit business relationship between Defendant and CMT.

for all hours worked when paid on an hourly basis. Such unpaid work occurred during the FLSA continuous workday, such as meetings with Dallas Cowboys management that was filmed and/or produced by CMT representatives. Such work was integral and indispensable with the primary job duties of Plaintiff relative to all such work relative to filming and/or production of "Making the Team" and training. Defendant did not make and keep an accurate record of all such hours worked per workday and workweek when Plaintiff was paid on an hourly basis.

37. At other times, and frequently during workweeks when Plaintiff was also paid on an hourly basis as identified above, Defendant paid Plaintiff on a flat rate basis for work at events such as game day performances and show group performances regardless of the total hours worked. The hours worked for such event performances were not recorded by Defendant for purposes of calculating total hours worked per workweek, and the remuneration paid for such event performances was not included in Plaintiff's regular rate of pay when Defendant did calculate overtime wages owed to Plaintiff based on hourly rate work for a corresponding workweek.

38. For example, during the seven day workweek of Saturday October 29, 2016 to Friday, November 4, 2016, Defendant recorded hourly work by Plaintiff totaling 45.75 hours. Defendant paid Plaintiff $8.00 per hour recorded for 45.75 hours and an overtime premium of $4.00 per hour for the 5.75 overtime hours Defendant recorded for that workweek. In addition to that work, and during that same workweek, Defendant paid Plaintiff $200.00 for a game day appearance on October 30, 2016 in a game against the Philadelphia Eagles. The total hours worked by Plaintiff for that game day appearance were not recorded by Defendant, and were not factored into the total hours worked by Plaintiff for that workweek by Defendant. Furthermore, the $200.00 game day appearance remuneration was not factored into Plaintiff's regular rate of

pay for the overtime hours worked during that workweek for which Defendant actually paid Plaintiff. That miscalculation of the regular rate of pay resulted in an underpayment of overtime wages owed Plaintiff.

39. Plaintiff was also instructed by management with Defendant to make social media posts relative to her work as a cheerleader for the Dallas Cowboys to benefit Defendant's business operations. However, Defendant did not pay Plaintiff for that work or record the actual hours spent by Plaintiff on that work on a daily and/or workweek basis.

40. Defendant labeled Plaintiff as a FLSA non-exempt employee.

41. Earnings statements Defendant issued to Plaintiff identified her as an overtime eligible employee of Defendant.

42. Plaintiff routinely worked in excess of 40 hours per workweek while performing her cheerleading job duties and work for Defendant. However, Plaintiff was not paid time and one-half her regular rate of pay for each and every hour worked over 40 in each workweek during her employment with Defendant.

43. Additionally, Plaintiff was not paid at least $7.25 per hour for each hour worked per workweek when dividing the wages received for that workweek by the hours worked in that workweek.

44. Defendant did not make and keep a record of all of the data required by 29 C.F.R. § 516.2(a) in connection with the work performed by Plaintiff.

45. Defendant did not make a record of the actual hours Plaintiff worked per seven day workweek as an employee of Defendant.

46. Plaintiff worked with many other cheerleader employees of Defendant who performed similar work and were paid in a similar, if not identical, fashion to Plaintiff. Like

Plaintiff, those employees regularly worked in excess of 40 hours in a workweek, but were not paid time and one-half their respective regular rates of pay by Defendant for all such hours worked over 40. Like Plaintiff, those employees were not paid at least $7.25 per hour worked when dividing all wages received in a workweek by the respective hours worked in that workweek. That overtime and minimum wage practice and/or policy of Defendant is ongoing as to current employee cheerleaders of Defendant.

47.   Defendant employed a mascot, generally known as "Rowdy" who, at all times relevant to this lawsuit, is and has been a male. Plaintiff and the EPA Claim Putative Collective Action Member cheerleaders are all female.

48.   During the three year period preceding the date this lawsuit was filed, Defendant paid its male mascot approximately $25 per hour.

49.   During the three year period preceding the date this lawsuit was filed, Defendant paid its male mascot approximately $65,000 per year.

50.   Plaintiff's total annual gross wages from Defendant were approximately $5,817.99 in 2014, $12,381.09 in 2015, $16,516.01 in 2016, and approximately $8,424.66 in 2017. The EPA Putative Collective Action Members received substantially similar annual compensation, all of which was significantly less than that paid to Defendant's male mascot.

51.   Plaintiff and the EPA Putative Collective Action Members performed work which required equal skill, effort, and responsibility under similar working conditions as Defendant's mascot. Examples include Defendant having Plaintiff and the EPA Claim Putative Collective Action Members appear at and perform substantially similar work as Defendant's mascot at games, camps, group appearances, and other events that benefited Defendant's business

operations (such as dinner events, business events, youth football appearances, and events of corporate sponsors and/or customers of Defendant).

## IV.  CONTROLLING LEGAL RULES

52. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

53. The FLSA generally requires that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

54. The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

55. Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216(b).

56. The FLSA generally requires that an employer shall pay to each of its employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce wages of not less than $7.25 for each hour worked. 29 U.S.C. § 206(a)(1)(C).

57. Failing to pay the required minimum hourly wage is a violation of the FLSA. 29 U.S.C. § 216(b).

58. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

59. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

60. "Under the EPA [which is set forth in the FLSA], an employer is prohibited from discriminating by paying wages to employees [in a covered establishment] at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; she was paid (iii) a system which measures earnings by

quantity or quality of production; or (iv) a differential based on any other factor other than sex… ." *Brimmer v. Shinseki*, No. 3:11-CV-1956-L, 2013 WL 4763947, at *11 (N.D. Tex. Sept. 5, 2013) (Lindsay, J.) (citing 29 U.S.C. § 206(d)).

61. "To establish a prima facie case under the EPA, a plaintiff must demonstrate that (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than members of the opposite sex providing the basis for comparison." *Westrich-James v. Dallas Morning News, Inc.*, No. 3:07-CV-1329-G, 2012 WL 4068982, at *4 (N.D. Tex. Sept. 17, 2012) (Fish, J.) (citing *Jones v. Flagship International*, 793 F.2d 714, 722–23 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987)). "A plaintiff need not show that her job duties were identical to those of higher paid male employees, only that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal." *Id.*

## V.     PLAINTIFF'S CLAIMS

62. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

**A.     FLSA Claims**

63. This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq*.

64. At times relevant, Plaintiff was an employee of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

65. At all material times, Defendant is and has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

66. At all material times, Defendant is and has been an "enterprise engaged in commerce" as that phrase is used in connection with the FLSA. 29 U.S.C. § 203(s)(1)(A).

67. Plaintiff routinely worked in excess of 40 hours during seven-day workweeks for Defendant. When she worked such overtime hours, she was entitled to overtime compensation at one and one-half times her regular rate of pay for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1).

68. At times when Defendant did pay Plaintiff overtime premium compensation for hours worked in a workweek that Defendant recorded, which were customarily less than the actual total hours worked during that workweek, Defendant failed to accurately calculate the regular rate of pay which resulted in an underpayment of the overtime wages owed for each such workweek. For example, if Plaintiff performed work resulting in hours over 40 in the same seven day workweek in which she was paid both hourly pay and fixed rate event pay, the regular rate of pay calculated by Defendant was based on only the hourly rate of pay and did not include the fixed rate event pay. That also resulted in an underpayment of FLSA mandated overtime wages.

69. Defendant failed to pay Plaintiff overtime premium compensation at one and one-half times her regular rate of pay for all hours worked over 40 in each and every seven-day workweek during her employment with Defendant.

70. Defendant's failure to pay Plaintiff all overtime premium compensation owed is a violation of the FLSA. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 216(b).

71. Furthermore, Defendant did not pay Plaintiff at least $7.25 per hour worked when dividing the total wages Defendant paid Plaintiff for work during a workweek by all hours worked by Plaintiff in that workweek.

72.     Defendant's failure to pay Plaintiff all minimum wage compensation owed is a violation of the FLSA. 29 U.S.C. § 206(a)(1)(C); 29 U.S.C. § 216(b).

73.     Defendant did not maintain an accurate number of the daily and weekly hours worked by Plaintiff. 29 C.F.R. § 516.2(a)(7).

74.     Defendant's violations of the FLSA are and were willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness). For example, Defendant did not make and keep an accurate record of the total hours worked by Plaintiff on a daily and weekly basis as required by the FLSA. *Solano v. Ali Baba Mediterranean Grill, Inc.*, No. 3:15-CV-0555-G, 2016 WL 808815, at *5 (N.D. Tex. Mar. 2, 2016) (Fish, J.) (failure to keep accurate or complete records of employment is evidence that can support a finding of willfulness under the FLSA); *Pye v. Oil States Energy Servs.*, LLC, 233 F. Supp. 3d 541, 565 (W.D. Tex. 2017) (same).

75.     Plaintiff seeks all damages available for Defendant's violations of the FLSA.

**B.     Plaintiff's EPA Claims**

76.     This action is authorized and instituted pursuant to the EPA, which is codified within the FLSA. 29 U.S.C. §§ 201, *et seq*.

77.     At times relevant, Plaintiff was an employee of Defendant pursuant to the EPA. 29 U.S.C. § 203(e).

78.     At all material times, Defendant has been an eligible and covered employer pursuant to the EPA. 29 U.S.C. § 203(d).

79.     At all material times, Defendant has been a covered employer under the EPA. 29 U.S.C. § 206(a)&(d).

80. At all material times, Defendant is and has been an "enterprise engaged in commerce" as that phrase is used in connection with the EPA. 29 U.S.C. § 203(s)(1)(A).

81. Plaintiff, a female formerly employed by Defendant, performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as Defendant's mascot, who at all times relevant, was a male. Relative to that work, Plaintiff was paid less than Defendant's male mascot on both an hourly and annual basis. Defendant's practices and policies relative thereto violate the EPA. 29 U.S.C. § 206(d).

82. Defendant's violations of the EPA are and were willful within the meaning of 29 U.S.C. § 255(a). Defendant is and has been aware that its female cheerleaders, like Plaintiff, performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as Defendant's mascot, who at all times relevant, was a male, and that the mascot was paid at a higher rate than Plaintiff and the EPA Putative Collective Action Members.

83. Plaintiff seeks all damages available for Defendant's violations of the EPA.

## VI. COLLECTIVE ACTION ALLEGATIONS

84. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

### A. Overtime Claim Putative Collective Action Members

85. The Overtime Claim Putative Collective Action Members are all current and/or former employees of Defendant who are/were similarly situated to Plaintiff that: (a) work/worked as cheerleaders for Defendant; (b) are/were paid on an hourly rate and/or flat fee basis; (c) work/worked more than 40 hours in any workweek in the relevant time period as employees of Defendant; and (d) are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each such workweek by Defendant.

86. The Overtime Claim Putative Collective Action Members are similarly situated to Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

87. The time period relevant to the claims of the Overtime Claim Putative Collective Action Members is three years preceding the date this lawsuit was filed and forward, or such other time as deemed appropriate by the Court.

88. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (Fish, J.) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (Boyle, J.) (same).

89. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding relative to the Overtime Claim Putative Collective Action Members.

90. Plaintiff further reserves the right to amend the definition of the Overtime Claim Putative Collective Action Members, or establish sub classes if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

B. **Minimum Wage Claim Putative Collective Action Members**

91. The Minimum Wage Claim Putative Collective Action Members are all current and/or former employees of Defendant who are/were similarly situated to Plaintiff that: (a) work/worked as cheerleaders for Defendant; (b) are/were paid on an hourly rate and/or flat fee basis; and (c) are not/were not paid at least $7.25 per hour for each hour worked in a seven day workweek when dividing the total wages paid by the total hours worked in each such workweek.

92. The Minimum Wage Claim Putative Collective Action Members are similarly situated Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

93. The time period relevant to the claims of the Minimum Wage Claim Putative Collective Action Members is three years preceding the date this lawsuit was filed and forward, or such other time as deemed appropriate by the Court.

94. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan*, 497 F. Supp. 2d at 825; *Jones,* 281 F.R.D. at 290.

95. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding relative to the Minimum Wage Claim Putative Collective Action Members.

96. Plaintiff further reserves the right to amend the definition of the Minimum Wage Claim Putative Collective Action Members, or establish sub classes if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

C. **EPA Claim Putative Collective Action Members**

97. The EPA Claim Putative Collective Action Members are similarly situated to Plaintiff relative to her EPA Claims set forth above.

98. The EPA Claim Putative Collective Action Members are all current and/or former cheerleader employees of Defendant during the time period of three years preceding the date this lawsuit was filed and forward who are/were similarly situated to Plaintiff and are/were paid at a rate and/or amount less than that of Defendant's mascot.

99. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan,* 497 F. Supp. 2d at 825; *Jones*, 281 F.R.D. at 290.

100. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding relative to the EPA Claim Putative Collective Action Members.

101. Plaintiff further reserves the right to amend the definition of the EPA Claim Putative Collective Action Members, or establish sub classes if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VIII.   JURY DEMAND

102. Plaintiff demands a jury trial on all matters relevant to this lawsuit that may be properly submitted to a jury.

## IX.   DAMAGES AND PRAYER

103. Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff and the Overtime Claim Collection Action Members, Minimum Wage Claim Collective Action Members, and/or EPA Claim Putative Collective Action Members be awarded a judgment against Defendant for the following:

   a. Certification of Plaintiff's FLSA Overtime Claims as a collective action with the requirement of notice of this lawsuit being provided to the Overtime Claim Putative Collective Action Members;

   b. Actual damages in the amount of unpaid overtime wages and an equal amount in liquidated damages;

  c. Certification of Plaintiff's FLSA Minimum Wage Claims as a collective action with the requirement of notice of this lawsuit being provided to the Minimum Wage Claim Putative Collective Action Members;

  d. Actual damages in the amount of unpaid minimum wages and an equal amount in liquidated damages;

  e. Certification of Plaintiff's EPA Claims as a collective action with the requirement of notice of this lawsuit being provided to the EPA Claim Putative Collective Action Members;

  f. All damages allowed by the EPA;

  g. Post-judgment interest;

  h. Costs;

  i. Reasonable attorney's/attorneys' fees; and

  j. All other relief to which Plaintiff and the Actual and/or Putative Overtime Claim Collection Action Members, Actual and/or Putative Minimum Wage Collective Action Members, and/or EPA Claim Collective Action Members are justly entitled.

Date: June 12, 2018.

              Respectfully submitted,

            By: s/ Allen Vaught
               Allen R. Vaught
               TX Bar No. 24004966
               avaught@baronbudd.com
               Rebecca Currier
               TX Bar No. 24074098
               rcurrier@baronbudd.com
               Baron & Budd, P.C.
               3102 Oak Lawn Avenue, Suite 1100

Dallas, Texas  75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile

ATTORNEYS FOR PLAINTIFF